## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:19-cv-00094-MR

JONATHAN ANTHONY LEE TORRES, )
                                   )
           **Plaintiff,**         )
                                   )     <ins>**MEMORANDUM OF**</ins>
**vs.**                             )     <ins>**DECISION AND ORDER**</ins>
                                   )
**NATHAN BALL, et al.,**         )
                                   )
          **Defendants.**   )
_____ )

     **THIS MATTER** comes before the Court on the parties' Motions for Summary Judgment [Docs. 30, 34].

## I.    BACKGROUND

     The incarcerated Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 and state law for claims arising from his March 3, 2018 traffic stop, arrest and subsequent prosecution. The Defendants are: Nathan Ball, a Buncombe County Sheriff's Office ("BCSO") patrol sergeant; and Dane R. Onderdonk and Timothy Taylor, BCSO patrol deputies. The Complaint passed initial review on claims of: an illegal stop, search and

seizure; excessive force; malicious prosecution; and violations of the North Carolina Constitution.[1]

The Defendants now move for summary judgment. [Doc. 30]. The Court notified the Plaintiff of the opportunity to respond to Defendants' Motion and to present evidence in opposition pursuant to Fed. R. Civ. P. 56. [Doc. 31]. The Plaintiff filed an unverified Response to the summary judgment motion [Docs. 42], and the Defendants have filed a Notice of Intent Not to File Reply [Docs. 43].

The Plaintiff also moves for summary judgment.[2] [Doc. 34]. The Defendants filed a Response. [Doc. 35]. The Plaintiff did not file a reply and the time to do so has expired.

These matters have been fully briefed and are ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

---

[1] This case was assigned to Judge Frank D. Whitney at that time. [See Doc. 6].

[2] The Plaintiff submitted a verified Declaration in support of his motion for summary judgment. [Doc. 34-1]. About a month later, the Plaintiff filed a "Summary Judgment Memorandum Sworn" [Doc. 38] in which it appears that he attempts to verify the memorandum filed in support of his motion for summary judgment.

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174,

3

180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, it is well established that "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Id. (citing Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir. 1979) (*per curiam*)); see also World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., 783 F.3d 507, 516 (4th Cir. 2015) (same). Further, "an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage." Goodman v. Diggs, No. 18-7315, 2021 WL 280518, at *5 (4th Cir. Jan. 28, 2021).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.    FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

### A.    Attempts to Locate the Plaintiff

On February 26, 2018, Sergeant Ball received an Attempt to Locate ("ATL") for Plaintiff due to outstanding Buncombe County warrants for breaking and entering and felony larceny after breaking and entering and "9+" outstanding Henderson County warrants.  [Doc. 30-3: ATL; Doc. 30-2: Ball Decl. at ¶ 6].  In a BCSO ComStat meeting on February 27, 2018, the Plaintiff was discussed as a person of interest and as having a number of outstanding warrants.  [Doc. 30-2: Ball Decl. at ¶ 7].  Around that same day, Sergeant Ball went into the County's Record Management System ("RMS") where he verified Plaintiff's two outstanding and active Buncombe County warrants.  [Id. at ¶ 8].  Sergeant Ball also researched Plaintiff's criminal history in the RMS database and found that he had been convicted of numerous offenses, including assault with a deadly weapon, drug

possession, and carrying a concealed weapon. [Id. at ¶ 9; see Doc. 30-5: RMS Information]. This information led Sergeant Ball to conclude that he needed to use caution if he had to arrest the Plaintiff. [Doc. 30-2: Ball Decl. at ¶ 9].

Sergeant Ball then spoke to a confidential informant who has provided Ball with reliable information in the past. The informant advised Sergeant Ball that the Plaintiff had been staying at 130 Flat Top Mountain Road. [Id. at ¶¶ 10-11]. Sergeant Ball also learned from the confidential informant that the Plaintiff had been driving a dark green Honda Accord with dark tinted windows. [Id. at ¶ 12]. Sergeant Ball learned other locations where the Plaintiff had been seen, and Ball would frequently check locations, including 130 Flat Top Mountain Road, after receiving reports of the Plaintiff's possible whereabouts. [Id. at ¶¶ 13-16].

## B. Vehicle Stop and Plaintiff's Arrest

On March 3, 2018, at around 3:00 a.m., Sergeant Ball saw a dark green Honda Accord with the trunk open parked at 130 Flat Top Mountain Road. [Doc. 30-2: Ball Decl. at ¶ 17]. Sergeant Ball drove past the address, parked at a location where he could watch the driveway, and saw a male subject walking around the area where the vehicle was parked. [Id. at ¶ 19]. Because Sergeant Ball feared that the vehicle would not leave the residence

6

with his patrol car in the area, he drove back past the driveway, backed his vehicle into another driveway, and turned off his lights to see if the vehicle would leave 130 Flat Top Mountain Road. [Id. at ¶ 20].

A few moments later, the same dark green Honda that he had seen parked at 130 Flat Top Mountain Road a few minutes earlier passed Sergeant Ball's position. [Id. at ¶ 21]. Sergeant Ball pulled out of the driveway and began following the vehicle. The vehicle turned onto what appeared to be a private drive at 714 Old Fort Road, and Sergeant Ball followed, activating his body camera. [Id. at ¶¶ 25-26].

Based on the information that Sergeant Ball had received from the confidential informant, and Ball's corroboration of that information, Ball believed that the Plaintiff was operating the vehicle and that he had two outstanding Buncombe County felony warrants and nine Henderson County warrants.[3] [Id. at ¶ 27].

About halfway up the driveway, believing that the Plaintiff was operating the vehicle, Sergeant Ball activated his blue lights and called the

---

[3] The Plaintiff asserts that Defendant Ball did not know at the time of the vehicle stop and search that the Plaintiff had active warrants and that Ball did not discover this fact until the end of the incident. [Doc. 34-3 at 9: Plaintiff's Memorandum in Support of Summary Judgment]. Plaintiff, however, cites to no evidentiary basis for this assertion.

traffic stop into Communications.[4]  [Id. at ¶ 28].  At first the vehicle did not stop.  [Id. at ¶ 29].  Sergeant Ball called the vehicle's Tennessee plates into Communications as he drove up the driveway.  [Id. at ¶ 30].  The vehicle began to slow as it approached the end of the driveway, and Sergeant Ball feared that the driver was going to run.  [Id. at ¶ 31].

After the vehicle came to a stop, Sergeant Ball exited his patrol vehicle, drew his firearm, shined his flashlight at the vehicle and ordered the driver to show his hands.  [Id. at ¶ 32].  Sergeant Ball approached the vehicle with his gun pointed towards the Plaintiff.  [Doc. 1 at 4: Verified Complaint; Doc. 34-3 at 3: Memo. in Support of Plaintiff's Motion for Summary Judgment].[5] Sergeant Ball gave the driver loud verbal commands to put his hands outside the vehicle and the driver complied.  [Doc. 30-2: Ball Decl. at ¶ 33].

As Sergeant Ball approached the vehicle, he could see that the driver was the Plaintiff.  [Id. at ¶ 34].  Sergeant Ball opened the driver's door and ordered the Plaintiff to lie on his belly, and the Plaintiff complied.  [Id. at ¶

_____

[4] The Plaintiff asserts that Defendant Ball's statement that he believed the vehicle's operator to be the Plaintiff was a hunch and, if he had known that the Plaintiff was known to be driving a dark Honda he would have included that information in his report to Communications.   [Doc. 34-3 at 4: Plaintiff's Memorandum in Support of Summary Judgment].

[5] Sergeant Ball asserts that he did not point his weapon at the driver, but pointed it at the ground.  [Doc. 30-2: Ball Decl. at ¶ 32].

36]. While handcuffing the Plaintiff, Sergeant Ball asked whether the Plaintiff had any weapons on him and whether he had any outstanding warrants. [Id. at ¶¶ 38-39]. The Plaintiff responded that he had no warrants. [Id. at ¶ 39]. Sergeant Ball rolled the Plaintiff onto his back and patted his pockets for weapons.[6] [Id. at ¶ 40]. The Plaintiff was wearing a ski cap on top of his head, and Sergeant Ball noticed that there was also a passenger in the vehicle. [Id. at ¶¶ 41-42]. Sergeant Ball then received a call back from Communications reporting that the vehicle was stolen. [Id. at ¶ 43].

Sergeant Ball sat the Plaintiff up, checked the Plaintiff's pockets again, and found two small plastic baggies in his pants pocket, one of which Ball believed to be methamphetamine and the second of which he believed to contain heroin, based on his experience and training. [Id. at ¶¶ 44-45].

The Plaintiff asked Sergeant Ball why he had pulled him over, and Ball responded that the Plaintiff had warrants and the vehicle is stolen. [Id. at ¶ 47]. The Plaintiff denied that the vehicle was stolen. [Id. at ¶ 48].

Sergeant Ball got the Plaintiff to his feet and called Communications to confirm the warrants and allowed the Plaintiff to have a cigarette. [Id. at ¶¶

---

[6] The Plaintiff disagrees that this was a pat-down for weapons. He asserts that Defendant Ball entered his pockets and found two bags of drugs at that time. [Doc. 1 at 5, 12-13: verified Complaint; Doc. 34-3 at 3: Memo. in Support of Plaintiff's Motion for Summary Judgment].

9

49-50]. After the Plaintiff finished his cigarette, Sergeant Ball and Deputy Taylor searched the Plaintiff's person again. [Id. at ¶ 51]. Deputies Taylor and Onderdonk also searched the vehicle and found two glass pipes with black and brown residue and rubber tourniquets. [Id. at ¶ 53; Doc. 30-8: Onderdonk Decl. at ¶¶ 11-12; Doc. 30-9: Taylor Decl. at ¶ 13].

The Defendants have submitted video files containing the footage from the body cameras worn by Sergeant Ball and Deputies Taylor and Onderdonk at the time of the incidents at issue. Sergeant Ball's body camera footage shows the following events:

| | |
|---|---|
| 1:18 | Ball calls the Honda's license plate number in to Communications |
| 1:27 | Ball exists his vehicle |
| 1:33 | Ball approaches the Honda and calls for Plaintiff to show his hands |
| 1:34 | Plaintiff places his hands outside the Honda's window |
| 1:35 | An unknown object appears briefly in Ball's left hand |
| 1:39 | Ball orders Plaintiff to exit the Honda |
| 1:41 | Plaintiff exits the Honda and lies on the ground |
| 2:00 | Ball handcuffs Plaintiff |

10

| | |
|---|---|
| 2:21 | Ball asks Plaintiff if he still has warrants while patting Plaintiff's pockets |
| 2:26 | Plaintiff responds that he does not know of any warrants |
| 2:35 | Communications calls to say the Honda is "10-75" |
| 3:06 | Ball removes a small baggie containing a white substance from Plaintiff's pocket |
| 3:59 | Ball tells Plaintiff he has warrants and that the car is stolen |
| 5:21 | Ball calls Communications to confirm Plaintiff's warrants |

## C.   Criminal Proceedings

Sergeant Ball arrested the Plaintiff for the two outstanding warrants and directed Deputy Taylor to take the Plaintiff to the Detention Facility and charge him with possession of a stolen vehicle, possession of methamphetamine, and possession of drug paraphernalia.[7]  [Doc. 30-2: Ball Decl. at ¶ 54; Doc. 30-9: Taylor Decl. at ¶¶ 14-17; Doc. 30-10 at 1-3: Arrest Warrants for 18CR082170 (possession of a stolen motor vehicle), 18CR082168 (possession of methamphetamine), and 18CR082169 (possession of drug paraphernalia)].

---

[7] Sergeant Ball did not initially charge the Plaintiff with possession of heroin because he was not certain that the substance was heroin; he sent a sample to the State Crime Lab for testing before securing a warrant.  [Doc. 30-2: Ball Decl. at ¶ 45].  Sergeant Ball also sent the suspected methamphetamine to the State Crime Lab for testing.  [Doc. 30-2: Ball Decl. at ¶ 57].

The State Crime Lab confirmed that one of the packets found on the Plaintiff's person contained heroin and fentanyl. [Doc. 30-7: Laboratory Report]. The State Crime Lab, however, did not test the suspected methamphetamine. [Id.]. Lacking a positive test result, Assistant District Attorney Douglas P. Edwards dismissed the methamphetamine possession charge, 18CRS082168, against the Plaintiff on November 7, 2018. [Doc. 30-11: Edwards Decl. at ¶ 5].

On March 12, 2019, the Plaintiff entered into a plea agreement with the State of North Carolina pursuant to which the Plaintiff agreed to plead guilty to: 18CRS254 (habitual felon); 18CRS348 (habitual felon); 18CRS651 (possession of schedule I); 18CRS652 (possession of schedule II); 18CRS653 (possession of schedule I); 18CRS81828 (felony breaking and entering and felony larceny after breaking and entering); and 18CRS85123 (resisting a public officer). [Doc. 30-11: Edwards Decl. at ¶¶ 8-13]. In exchange for the Plaintiff's guilty plea, the State of North Carolina agreed to dismiss several charges, including the remaining charges from the March 3, 2018 incident.[8] [Id.; Docs. 30-12, 30-15, 30-16: Dismissals].

---

[8] The Plaintiff asserts that these charges were dismissed because of constitutional violations. [Doc. 1 at 12, 15: Verified Complaint; Doc. 34-3 at 14: Memo. in Support of Plaintiff's Motion for Summary Judgment].

## IV.   DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A.   Vehicle Stop

The Plaintiff first challenges the legality of the traffic stop.  The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.  The Due Process Clause of the Fourteenth Amendment levies on state governments the same restrictions that the Fourth Amendment imposes on the federal government.[9]  Mapp v. Ohio, 367 U.S. 643, 654-55 (1961).

A traffic stop constitutes a seizure under the Fourth Amendment and thus must be justified by reasonable suspicion of criminal activity or some other exception to the generally applicable warrant requirement.  See Kansas v. Glover, __ U.S. __, 140 S. Ct. 1183, 1187 (2020); Delaware v.

---

[9] To the extent that Plaintiff attempts to state separate Fourteenth Amendment claims, they are dismissed.  The correct analysis for Plaintiff's claims is under the Fourth Amendment, which applies to the states by way of the Fourteenth Amendment.

Prouse, 440 U.S. 648, 653 (1979).  "[I]f police have a reasonable suspicion, grounded in specific articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry[10] stop may be made to investigate that suspicion."  United States v. Hensley, 469 U.S. 221, 229 (1985).  Officers are justified in stopping and briefly detaining an individual in reliance on a police flyer or bulletin, to check the individual's identification.  Id. at 232 (noting that, "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment" but "[i]n such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit.").

Here, the Plaintiff alleges that Defendant Ball illegally stopped the vehicle he was driving without probable cause or a reasonable articulable suspicion of criminal activity.  However, the Defendants have presented with a forecast of evidence that Sergeant Ball had received an Attempt to Locate ("ATL") for the Plaintiff due to multiple outstanding warrants; that Sergeant Ball had been advised at a BCSO ComStat meeting that the Plaintiff was a person of interest; that Sergeant had verified the existence of the Plaintiff's outstanding warrants and had researched his criminal history; and that a

---

[10] Terry v. Ohio, 392 U.S. 1 (1968).

reliable confidential informant had advised Sergeant Ball that the Plaintiff had been staying at 130 Flat Top Mountain Road and had been driving a dark green Honda Accord with dark tinted windows.  Sergeant Bell then observed a male entering a dark green Honda Accord and leaving 130 Flat Top Mountain Road.  Based on this information, Sergeant Ball had reasonable suspicion to believe that the Plaintiff had multiple outstanding arrest warrants and was driving the Honda in question.  As  such, Sergeant Ball was justified in conducting a stop of the Plaintiff's vehicle.  See Hensley, 469 U.S. at 232 (knowledge that an occupant of a vehicle has an outstanding warrant provides a sufficient basis to support a traffic stop to arrest that individual).

The Plaintiff has failed to forecast any evidence demonstrating that the vehicle stop violated the Fourth Amendment.  Therefore, Defendants' Motion for Summary Judgment with regards to the legality of the vehicle stop will be granted, and the Plaintiff's Motion for Summary Judgment will be denied.

### B.    Plaintiff's Arrest

The Plaintiff argues that Defendant Ball unlawfully arrested him without probable cause.  Because an arrest amounts to a Fourth Amendment seizure, probable cause is necessary for an arrest to be lawful.  See Henderson v. Simms, 223 F.3d 267, 272 (4th Cir. 2000); see also Draper v. United States, 358 U.S. 307, 310-11 (1959).  A facially valid arrest warrant

provides the arresting officer with sufficient probable cause to arrest the individual identified in the warrant.  Baker v. McCollan, 443 U.S. 137, 143–44 (1979).

The Defendants have presented a forecast of evidence that Sergeant Ball had ample probable cause to arrest the Plaintiff.  Sergeant Ball knew that the Plaintiff was a "person of interest" and had multiple outstanding warrants.  Sergeant Ball also had information from a trusted confidential source that the Plaintiff was driving a dark green Honda and had been staying at staying at 130 Flat Top Mountain Road.  After observing a male driving a dark green Honda from that location, Sergeant Ball conducted a traffic stop.  When he approached the driver's window, he was able to recognize the Plaintiff.  Sergeant Ball was therefore justified in arresting the Plaintiff during the traffic stop.

The Plaintiff contends that Defendant Ball did not know, until the end of the traffic stop, that the Plaintiff had outstanding warrants.  However, the Plaintiff fails to forecast any evidence in support of that assertion aside from his own unsupported opinion, which the Court is not required to accept.  See Eastern Shore Mkt. Inc, 213 F.3d at 180 (courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").

The Plaintiff also appears to argue that Defendant Ball violated the Fourth Amendment by failing to verify the warrants *before* he seized the Plaintiff.   The Plaintiff has provided no factual or legal support for such an assertion.   Sergeant Ball's knowledge of the outstanding warrants was adequate to justify the Plaintiff's arrest.  See Souder v. Toncession, No. AW-07-1996, 2009 WL 4348831, at *3 (D. Md. Nov. 30, 2009) (granting officer summary judgment where officer arrested subject pursuant to a valid warrant of which a police source informed him; the officer did not have an affirmative duty to confirm the information about the warrant and the officer did not need to have actual possession of the warrant when executing the arrest).

The Defendants have also submitted a forecast of evidence that Sergeant Ball knew, shortly after the Plaintiff was detained, that the Honda that the Plaintiff was driving had been reported stolen.  See Tinch v. United States, 189 F.Supp.2d 313, 319 (D. Md. 2002) ("Probable cause was unquestionably established by the fact that the car was reported as stolen in the NCIC….").  This provided further justification for the Plaintiff's arrest.

The Plaintiff has failed to forecast any evidence demonstrating that his arrest was not supported by probable cause.  Therefore, Defendants' Motion for Summary Judgment on this claim will be granted, and the Plaintiff's Motion for Summary Judgment will be denied.

## C.    Excessive Force Claim

The Plaintiff alleges that Sergeant Ball used excessive force by detaining him at gunpoint.  The Plaintiff argues that this use of force was excessive because he had never fled officers in the past, and he immediately submitted to Ball's show of authority.

The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" in the course of making an arrest.[11]  Graham v. Connor, 490 U.S. 386, 388 (1989); Meyers v. Baltimore Cnty., Md., 713 F.3d 723 (4th Cir. 2013).   Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," taking into account "the severity of the crime at issue, whether the suspect poses an immediate to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight."  Graham, 490 U.S. at 396, 399.  An officer is "authorized to take such steps as [are] reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of [a Terry] stop."  Hensley, 469 U.S. at 235. "[A]pproaching a suspect with [a] drawn weapon[] is an extraordinary

---

[11] Because the alleged use of excessive force occurred at the time of the Plaintiff's arrest, it is analyzed under the Fourth rather than the Eighth Amendment.  See generally Hudson v. McMillian, 503 U.S. 1 (1992) (the Eighth Amendment places restrains on prison officials from, for instance, using excessive physical force against prisoners).

18

measure," but this level of intrusion can be justified "as a reasonable means of neutralizing potential dangers to police and innocent bystanders." United States v. Sinclair, 983 F.2d 598, 602 (4th Cir. 1993).

The Plaintiff's contention that Sergeant Ball approached him with his firearm pointed at the Plaintiff is belied by the bodycam footage. This footage reveals that Sergent Ball did not point a firearm at the Plaintiff at any point during the approximately 33-second period between Ball's exit from his vehicle and his handcuffing of the Plaintiff.[12] The Defendants have also come forward with a forecast of evidence demonstrating circumstances including the Plaintiff's outstanding warrants, serious criminal history, and failure to immediately stop. Thus, even if Sergeant Ball had pointed his weapon at the Plaintiff, his actions would have been objectively reasonable under the circumstances. See United States v. Taylor, 857 F.2d 210, 213-14 (4th Cir. 1988) (holding that it was permissible for officers to draw weapons during stop of suspected drug traffickers, one with numerous prior convictions, including assault and assault with intent to murder). Sergeant Ball was not required to wait for the Plaintiff to exhibit violence or attempt to flee before using reasonable force to detain him. See Foote v. Dunagan, 33

---

[12] Assuming *arguendo* that the object that briefly appears in Defendant Ball's left hand was a firearm, that object is visible for less than a second.

F.3d 445 (4th Cir. 1994) (where an officer is approaching a subject during a Terry stop who is suspected of being armed and dangerous does not need probable cause to justify drawing his weapon; "[t]he Constitution does not require the officer who finds himself in such circumstances to ask the question and take the risk that the answer might be a bullet.") (citation and internal quotation marks omitted). Sergeant Ball's drawing of a weapon for, at most, 33 seconds while securing the Plaintiff was not excessive or unreasonable.[13]

In sum, the Defendants have come forward with a forecast of evidence demonstrating that Sergeant Ball's actions were objectively reasonable under the totality of the circumstances, and the Plaintiff has failed to forecast any evidence that an excessive use of force occurred. Therefore, the Defendants' Motion for Summary Judgment on the excessive force claim will be granted and the Plaintiff's Motion for Summary Judgment will be denied.[14]

---

[13] The Plaintiff argues that Sergeant Ball violated county policy by drawing his weapon during the stop. Even if true, such would not rise to the level of a Fourth Amendment violation. See generally Virginia v. Moore, 553 U.S. 164, 176 (2008) ("state restrictions do not alter the Fourth Amendment's protections").

[14] Alternatively, the Court would grant summary judgment based on qualified immunity because it was not clearly established law at the time of the incident that drawing, or even pointing, a weapon at a subject for 33 seconds during a felony traffic stop is unconstitutional. See generally Hensley, 469 U.S. at 683-84; see, e.g., Sinclair, 983 F.2d at 602 (holding that officer's decision to draw his weapon during a Terry stop was not improper even though the officer "had no reason to believe [the suspects] were armed and dangerous"); Foote, 33 F.3d at 445 (collecting cases where it was reasonable for an officer to draw his weapon during a vehicle stop).

**D.    Unreasonable Search and Seizure Claims**

The Plaintiff alleges that Defendant Ball illegally searched the Plaintiff's person after he exited the vehicle.   A search incident to a lawful arrest, including a full-body search of the defendant's person, "requires no additional justification."  United States v. Robinson, 414 U.S. 218 (1973).

The Defendants' forecast of evidence reveals that an initial pat-down for weapons was justified as part of the initial Terry stop and that the later search of Plaintiff's pockets was justified by outstanding warrants and probable cause to believe new law violations occurred.   Terry, 392 U.S. at 30-31 (a pat-down for weapons is permitted by the Fourth Amendment when an officer has reasonable grounds to believe that a subject is armed and dangerous); Robinson, 414 U.S. at 218 (inspection the contents of a crumpled cigarette package found in defendant's pocket was reasonable as part of his lawful arrest).  The fact that Plaintiff was not formally arrested until after the search of his pockets is irrelevant.  See United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991) (once officers have probable cause to arrest, a search incident to the arrest is proper even if the search precedes the formal arrest).   The Plaintiff's assertion that the initial pat-down was actually a search inside his pockets that uncovered the baggies of drugs is conclusively refuted by the bodycam footage.  See Eastern Shore Mkt. Inc., 213 F.3d at

180.  The body cam footage would lead any rational trier of fact to conclude that Defendant Ball initially patted down Plaintiff's pockets and only reached inside the Plaintiff's pockets and retrieved the baggies of white powder *after* he learned that the Honda had been reported stolen.

The Plaintiff has failed to forecast any evidence demonstrating that either the initial pat-down or the second more detailed search of his pockets was unreasonable.   Therefore, the Defendants will be granted summary judgment on the Plaintiff's claim that Defendant Ball improperly searched his person.

Next, the Plaintiff argues that Defendants' search of the vehicle he was driving was illegal.   However, he lacks standing to raise this issue.   "[A] person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile."   Byrd v. United States, 138 S.Ct. 1518, 1529 (2018) (quoting Rakas v. Illinois, 439 U.S. 128, 141 n.9 (1978)).

The Defendants have come forward with a forecast of evidence demonstrating that the vehicle Plaintiff was driving at the time of the traffic stop was stolen.  [Doc. 30-2 at 5; Doc. 30-6 at 12].  The Plaintiff has failed to forecast any evidence to the contrary.   Therefore, he lacks standing to

22

challenge the search of that vehicle, and the Defendants' Motion for Summary Judgment will be granted on that claim.

### E.    Malicious Prosecution and False Imprisonment

The Plaintiff alleges that he was illegally charged and falsely imprisoned as a result of his encounter with Defendants.    Malicious prosecution and false imprisonment are considered under a Fourth Amendment analysis.    See Wallace v. Kato, 549 U.S. 384, 387-88 (2007) (acknowledging that "Section 1983 provides a federal cause of action" for Fourth Amendment false arrest, and stating that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter"); Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000) (a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.").    To state such a claim, a plaintiff must allege that the defendant caused a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and the criminal proceedings terminated in plaintiff's favor. Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012).    A facially valid arrest warrant provides the arresting officer with sufficient probable cause to arrest the individual identified in the warrant.    Baker v. McCollan, 443 U.S. 137, 143–44 (1979).

The Plaintiff alleges that he was falsely charged and imprisoned for 24 days, until he posted bond, on the charges resulting from the March 3, 2018 incident. He alleges that the methamphetamine charge was dismissed on November 7, 2018, and the remaining charges were dismissed on March 12, 2019.

The Defendants have submitted a forecast of evidence demonstrating that the Plaintiff was charged and imprisoned based on probable cause to believe he possessed a stolen vehicle and committed drug offenses, which the Plaintiff has failed to rebut. [See Doc. 30-20: Warrants]. The existence of probable cause defeats the Plaintiff's claims of malicious prosecution and false imprisonment. That the suspected methamphetamine was ultimately not tested [Doc. 30-7 at 1: Laboratory Report], and the State dismissed the methamphetamine possession charge [Doc. 30-12: Dismissal 18CRS082168], does not undermine the legality of the Plaintiff's arrest, charging, and initial imprisonment for that offense. See generally Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."). The other charges resulting from the March 3, 2018 incident were dismissed as the result of a negotiated plea.

The Court need not determine whether this dismissal constituted a "favorable termination" because the Plaintiff has failed to forecast any evidence that his arrest on those charges was not supported by probable cause. [See Doc. 30-20: Warrants].

The Plaintiff has failed to forecast any evidence that he was arrested without probable cause for any of the offenses arising out of the March 3, 2018 incident. Therefore, the Defendants will be granted summary judgment on Plaintiff's claims of malicious prosecution and false imprisonment.

### F. North Carolina Constitutional Claims

Finally, the Plaintiff alleges that Defendants violated the North Carolina Constitution. "Claims brought under the North Carolina Constitution may be asserted only against state officials acting in their official capacities." Love-Lane v. Martin, 355 F.3d 766, 789 (4th Cir. 2004) (citing Corum v. Univ. of N.C., 330 N.C. 761, 413 S.E.2d 276, 293 (1992)). Because the Plaintiff claims that the Defendants violated his rights under the North Carolina Constitution in their individual capacities [see Doc. 1 at 2-3], the Defendants' Motion for Summary Judgment will be granted.

### V. CONCLUSION

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact that any constitutional violation occurred, and the

Defendants are entitled to judgment as a matter of law.[15]  Therefore, the Defendants' Motion for Summary Judgment is granted and the Plaintiff's Motion for Summary Judgment is denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED**, the Plaintiff's Motion for Summary Judgment [Doc. 34] is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to terminate this action.

**IT IS SO ORDERED.**

Signed: March 13, 2021

Martin Reidinger
Chief United States District Judge

---

[15] In light of the Court's conclusion that Plaintiff's forecast of evidence fails to show a constitutional violation, it likewise establishes the Defendants' entitlement to qualified immunity.  Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017).

26